**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **RASHEEM TILLERY,** : | |
|     **Plaintiff,** : | |
| : | |
| v. : | **CIVIL ACTION NO. 19-CV-5064** |
| : | |
| **DR. RONALD PHILLIPS,** *et al.*, : | |
|     **Defendants.** : | |

**GOLDBERG, J.**                                                                                                          **JULY 22, 2020**

## MEMORANDUM OPINION

Currently before the Court is a Second Amended Complaint ("SAC") filed by Plaintiff Rasheem Tillery, who has raised claims under 42 U.S.C. § 1983 and Pennsylvania law alleging deliberate indifference to Tillery's serious medical needs during his incarceration at the George W. Hill Correctional Facility ("GWHCF"). (ECF No. 14.) For the following reasons, I will dismiss Tillery's claims against certain Defendants for failure to state a claim pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii), and direct service of his claims against the remaining Defendants.

**I.     FACTUAL ALLEGATIONS**

The SAC names five Defendants: (1) Dr. Ronald Phillips, the Medical Director at GWHCF; (2) David Byrnes, the Warden of GWHCF; (3) George W. Hill; (4) GEO Corporation, a private contractor responsible for operating GWHCF ("GEO"); and (5) Mariel Trimble, a Health Administrator at GWHCF. (ECF No. 14 at 2-3.)[1] In essence, Tillery alleges that Dr. Phillips delayed providing care for his abdominal pain and a bleeding rectum for over a year because of a GEO policy to delay referrals for outside care as a cost-saving measure.

---

[1]    I adopt the pagination assigned to the Complaint by the CM/ECF docketing system.

Tillery alleges that in January 2018, he began experiencing bleeding from his rectum and sharp abdominal pain after he ingested sharp pieces of plastic that were in his food.[2] (Id.) It appears that Dr. Phillips was generally responsible for Tillery's care related to that condition during his incarceration at GWHCF. Tillery indicates that, at some point, he was given cream to apply to his rectum but he continued to experience bleeding and unbearable pain. (Id. at 6.)

The thrust of Tillery's Complaint is that, despite the continuation of symptoms, it took Dr. Phillips "over a whole year . . . to send [Tillery] to [an] outside hospital [apparently for a colonoscopy or other treatment] after multiple medical request[s] and grievance[s]" because Dr. Phillips wanted to avoid outside hospital bills in connection with a GEO policy intended to save money. (Id. at 5; see id. at 14 (indicating that Dr. Phillips was acting pursuant to a "written and unwritten policy due to cost saving[s] and profit gaining" to "avoid outside medical bills").) Tillery supports his contention with an allegation that Dr. Phillips "frequently" asked when he was either "going home" or being sent "upstate." (Id. at 14.) Tillery also alleges that Dr. Phillips falsely represented that Tillery would have to be placed on a waiting list for outside treatment and that the list was filled up. (Id. at 5, 14.) Tillery adds that he was transferred to another facility four days before a scheduled appointment to see a gastroenterologist. (Id. at 14.) While waiting for medical care, Tillery constantly leaked blood into his underwear. (Id.)

Tillery also alleges that on April 11, 2019, Dr. Phillips punched him in the side of his neck while attempting to confiscate Tillery's medical records from him. (Id. at 11.) According to Tillery, Defendant Trimble also intentionally withheld his medical records and permitted Dr. Phillips to alter certain records to cover his misdeeds. (Id. at 5 & 13.) Tillery adds that, at some

---

[2] It appears that Tillery does not intend to raise claims based on the presence of a foreign object in his food. Rather, Tillery seems to provide this allegation for context.

point during his stay at GWHCF, Dr. Phillips failed to follow treatment instructions from Crozer Keystone Briton Lake Endoscopy by failing to send him to a hospital when he experienced blood in his stool covering the toilet bowl, severe abdominal pain, black tarry stool, and was vomiting blood. (Id. at 15.) Tillery filed grievances about Dr. Phillips, but Warden Byrnes and GEO "failed to act" on those grievances. (Id. at 5 & 15.)

Tillery asserts claims for damages based on deliberate indifference to his serious medical needs as well as state tort claims for medical malpractice. (Id. at 3.) Tillery also asserts tort claims for assault and battery based on the incident during which Dr. Phillips allegedly punched him in the neck. (Id. at 3, 5.)

## II.    STANDARD OF REVIEW

As Tillery is proceeding *in forma pauperis* (see ECF No. 12), 28 U.S.C. § 1915(e)(2)(B) requires that I dismiss the Complaint if, among other things, it fails to state a claim. Whether a complaint fails to state a claim under § 1915(e)(2)(B)(ii) is governed by the same standard applicable to motions to dismiss under Federal Rule of Civil Procedure 12(b)(6), see Tourscher v. McCullough, 184 F.3d 236, 240 (3d Cir. 1999), which requires that I determine whether the Complaint contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quotations omitted). Conclusory allegations do not suffice. Id. As Tillery is proceeding *pro se*, I construe his allegations liberally. Higgs v. Att'y Gen., 655 F.3d 333, 339 (3d Cir. 2011).

## III.   DISCUSSION

"To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." West v. Atkins, 487 U.S. 42, 48 (1988).

"A defendant in a civil rights action must have personal involvement in the alleged wrongs" to be liable.  See Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988); see also Iqbal, 556 U.S. at 676 (explaining that "[b]ecause vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution.").  For the following reasons, I will dismiss Tillery's claims against Defendants George W. Hill, Warden Byrnes, and Mariel Trimble but permit him to proceed on his claims against Dr. Phillips and GEO.

### A. Claims Against George W. Hill

Tillery names "George W. Hill" as a Defendant in this case.  If he was intending to bring a claim against GWHCF based on the events that occurred there, his claims fail because the facility "is not a legal entity susceptible to suit." Cephas v. George W. Hill Corr. Facility, Civ. A. No. 09-6014, 2010 WL 2854149, at *1 (E.D. Pa. July 20, 2010) (quoting Ignudo v. McPhearson, Civ. A. No. 03-5459, 2004 WL 1320896, at *2 (E.D. Pa. June 10, 2004)); see also Regan v. Upper Darby Twp., Civ. A. No. 06-1686, 2009 WL 650384, at *4 (E.D. Pa. Mar. 11, 2009) ("[A] prison or correctional facility is not a 'person' that is subject to suit under federal civil rights laws.").  To the extent Tillery intended to name the deceased former warden of the prison for whom the facility is named, there is no plausible basis for his claims.

### B. Claims Against Warden Byrnes

The only factual basis for Tillery's claims against Warden Byrnes is that the Warden failed to respond or take action after he received grievances from Tillery about Dr. Phillips.  However, "[m]erely responding to or reviewing an inmate grievance does not rise to the level of personal involvement necessary to allege an Eighth Amendment deliberate indifference claim." Tenon v. Dreibelbis, 606 F. App'x 681, 688 (3d Cir. 2015) (per curiam); Curtis v. Wetzel, 763 F. App'x

259, 263 (3d Cir. 2019) (per curiam) ("The District Court properly determined that Defendants Wenerowicz, Lewis, and Shaylor – who participated only in the denial of Curtis' grievances – lacked the requisite personal involvement [in the conduct at issue]."); Folk v. Prime Care Med., 741 F. App'x 47, 51 (3d Cir. 2018) (per curiam) ("Although some of these defendants were apparently involved in responding to some of Folk's prison grievances, there are no allegations linking them to the underlying incidents and thus no basis for liability based on those later grievance reviews."). Additionally, "[i]f a prisoner is under the care of medical experts . . . , a non-medical prison official will generally be justified in believing that the prisoner is in capable hands." See Spruill v. Gillis, 372 F.3d 218, 236 (3d Cir. 2004); see also Carter v. Smith, 483 F. App'x 705, 708 (3d Cir. 2012) (per curiam) ("Prison officials cannot be held to be deliberately indifferent merely because they did not respond to the medical complaints of a prisoner who was already being treated by the prison medical staff."). Because the only basis for Tillery's claims against Warden Byrnes is his failure to respond to grievances—rather than any involvement in the underlying conduct—Tillery has not stated a plausible constitutional claim against the Warden.[3]

### C. Claims Against Dr. Phillips

Tillery alleges that Dr. Phillips exhibited deliberate indifference to his serious medical needs by delaying care for over a year for purposes of saving costs while Tillery continued to experience rectal bleeding and severe abdominal pain. To state a constitutional claim based on the failure to provide medical treatment, a prisoner must allege facts indicating that prison officials

---

[3] Furthermore, "[p]rison inmates do not have a constitutionally protected right to a grievance process." See Jackson v. Gordon, 145 F. App'x 774, 777 (3d Cir. 2005) (per curiam); see also Caldwell v. Beard, 324 F. App'x 186, 189 (3d Cir. 2009) (per curiam). Accordingly, Tillery cannot state a constitutional claim based solely on the Warden's participation in the grievance process.

5

were deliberately indifferent to his serious medical needs.[4]  See Farmer v. Brennan, 511 U.S. 825, 835 (1994).  A prison official is not deliberately indifferent "unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference."  Id. at 837.

"A medical need is serious, . . . if it is one that has been diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would easily recognize the necessity for a doctor's attention."  Monmouth Cnty. Corr. Institutional Inmates v. Lanzaro, 834 F.2d 326, 347 (3d Cir. 1987) (internal quotations omitted).  Deliberate indifference is properly alleged "where the prison official (1) knows of a prisoner's need for medical treatment but intentionally refuses to provide it; (2) delays necessary medical treatment based on a non-medical reason; or (3) prevents a prisoner from receiving needed or recommended medical treatment."  Rouse v. Plantier, 182 F.3d 192, 197 (3d Cir. 1999); Durmer v. O'Carroll, 991 F.2d 64, 68 (3d Cir. 1993).  Allegations of medical malpractice and mere disagreement regarding proper medical treatment are insufficient to establish a constitutional violation.  See Spruill v. Gillis, 372 F.3d 218, 235 (3d Cir. 2004).  However, "that some treatment has been provided does not automatically defeat an Eighth Amendment deliberate-indifference claim."  Shifflett v. Korszniak, 934 F.3d 356, 367 (3d Cir. 2019).  "Even where medical care is ultimately provided, a prison official may nonetheless act

---

[4] The Eighth Amendment governs claims brought by convicted inmates challenging their conditions of confinement, while the Due Process Clause of the Fourteenth Amendment governs claims brought by pretrial detainees.  See Hubbard v. Taylor, 399 F.3d 150, 166 (3d Cir. 2005). However, the standard under the Eighth Amendment and Fourteenth Amendment for claims related to a prisoner's medical needs is essentially the same for purposes of the analysis.  See Parkell v. Morgan, 682 F. App'x 155, 159 (3d Cir. 2017) (per curiam); see also Moore v. Luffey, 767 F. App'x 335, 340 n.2 (3d Cir. 2019) (declining to address whether a new standard applies to claims raised by pretrial detainees based on issues related to medical care).

with deliberate indifference by delaying the treatment of serious medical needs, . . . though the reason for the delay and the nature of the medical need is relevant in determining what type of delay is constitutionally intolerable." McElligott v. Foley, 182 F.3d 1248, 1255 (11th Cir. 1999).

Here, Tillery alleges that, although Dr. Phillips was aware of Tillery's unabated symptoms, he refused to schedule an appointment with a doctor outside of the prison for over a year to avoid incurring costs. Tillery supports that assertion with allegations that Dr. Phillips repeatedly asked him when he was expected to be released or sent "upstate," that Dr. Phillips misrepresented the reason for the delay in his care, and that Dr. Phillips prevented Tillery from seeing his own medical records. Tillery also claims that Dr. Phillips would not authorize care at an outside hospital, despite another provider's instructions, when Tillery experienced serious symptoms including vomiting blood and rectal bleeding that covered the toilet bowl. Taken together, these allegations could support an inference of deliberate indifference such that Tillery may proceed on his constitutional claim against Dr. Phillips at this time. See Pearson v. Prison Health Serv., 850 F.3d 526, 541 (3d Cir. 2017) (observing that a "pattern of disinterested conduct" could support a finding of deliberate indifference); Rouse, 182 F.3d at 197 (reasoning that deliberate indifference may be found where a prison official "persists in a particular course of treatment in the face of resultant pain and risk of permanent injury" (internal quotations omitted)). Tillery may also proceed on his related state law claims against Dr. Phillips at this time, including his claim that Dr. Phillips assaulted him by punching him in the neck.

**D. Claims Against GEO**

Tillery alleges that Dr. Phillips delayed medical care based on a GEO policy to avoid incurring costs of care associated with outside hospitals or physicians. A private company that provides medical services to inmates "'cannot be held responsible for the acts of its employees

under a theory of respondeat superior or vicarious liability.'" Sims v. Wexford Health Sources, 635 F. App'x 16, 20 (3d Cir. 2015) (per curiam) (quoting Natale v. Camden Cnty. Corr. Facility, 318 F.3d 575, 583 (3d Cir. 2003)). Rather, in order to hold a private company like GEO liable for a constitutional violation under § 1983, Tillery must allege "a relevant . . . policy or custom, and that the policy caused the constitutional violation [he] allege[s]." Natale, 318 F.3d at 583-84 (citing Bd. of the Cty Comm'rs of Bryan Cty, Oklahoma v. Brown, 520 U.S. 397, 404 (1997)); see also Lomax v. City of Phila., Civ. A. No. 13-1078, 2017 WL 1177095, at *3 (E.D. Pa. Mar. 29, 2017) ("Because [defendant] is a private company contracted by a prison to provide health care for inmates, . . . it can only be held liable for constitutional violations if it has a custom or policy exhibiting deliberate indifference to a prisoner's serious medical needs.") (citations and quotations omitted). "To satisfy the pleading standard, [the plaintiff] must . . . specify what exactly that custom or policy was." McTernan v. City of York, Pa., 564 F.3d 636, 658 (3d Cir. 2009).

Tillery alleges that medical care for his consistently bleeding rectum associated with severe abdominal pain was delayed because of a GEO policy discouraging referrals for care outside the facility to save costs. He also alleges that Dr. Phillips asked whether he would be going home or whether he would be transferred to another facility to support his allegation that care was being delayed for a non-medical reason. Tillery further claims that, as a result of this policy, his treatment was delayed for approximately a year while he continued to suffer pain and rectal bleeding and failed to respond to the provided treatment. In other words, Tillery has alleged with some amount of specificity a policy of implementing cost savings, the basis for inferring the policy impacted his care, and that treatment was denied as a result. Compare Winslow v. Prison Health Servs., 406 F. App'x 671, 674 (3d Cir. 2011) (allegation that inmate "was harmed by 'policies to save money'" was "exceedingly conclusory" where the complaint did not "provide any indication

either of (1) what the relevant policies are, (2) what basis [the inmate had] for thinking that 'policies to save money' affected his medical treatment, or (3) what specific treatment he was denied as a result of these policies"). Viewing these allegations in the light most favorable to Tillery and also drawing any inferences fairly raised by Tillery in his favor, I find that Tillery has alleged a sufficient basis for proceeding on his claim against GEO at this time. See Shultz v. Allegheny Cnty., 835 F. Supp. 2d 14, 23 (W.D. Pa. 2011) (allegations that inmate's diagnosis and care were delayed due to cost concerns, including allegations that inmate's condition was not responding favorably to provided treatment, along with "inferred circumstances [were] sufficient to posit that the asserted cost-cutting/saving policy or practice both existed and was a moving force in causing [inmate's] death"); Soto v. Leskowsky, Civ. A. No. 10-2366, 2011 WL 4498827, at *9 (M.D. Pa. Sept. 27, 2011) (denying motion to dismiss policy claim when inmate alleged that the defendant "implemented a policy or adopted a custom of agreeing not to recommend immediate surgical repairs of traumatic muscle injury, or tendon, to avoid excessive healthcare costs for prisoners"); Gioffre v. Cnty. of Bucks, Civ. A. No. 08-4232, 2009 WL 3617742, at *4 (E.D. Pa. Nov. 2, 2009) (denying motion to dismiss where the Complaint, although "lack[ing] much detail" alleged "a problematic practice or policy, known to and ratified by Defendants, of denying medical care for cost-saving reasons"). Accordingly, Tillery may proceed on his constitutional and related state law claims against GEO at this time.

### E. Claims Against Mariel Trimble

Tillery's claims against Trimble are based on allegations that Trimble withheld unspecified medical records from Tillery and permitted Dr. Phillips to alter those records. "Prisoners have a right to such information as is reasonably necessary to make an informed decision to accept or reject proposed treatment, as well as a reasonable explanation of the viable alternative treatments

that can be made available in a prison setting." White v. Napoleon, 897 F.2d 103, 113 (3d Cir. 1990). Tillery does not allege that Trimble's actions prevented him from evaluating or receiving any medical care. His allegations against Trimble are also insufficiently specific as it is not clear what records were altered, how the records were altered, or how this action caused Tillery harm. In that regard, nothing in Tillery's allegations suggests that Trimble's actions prevented him from pursuing his case in court. See Jutrowski v. Twp. of Riverdale, 904 F.3d 280, 294 (3d Cir. 2018) (explaining that conspiratorial cover-ups could support a claim for denial of access to the courts if plaintiff's ability to access the courts is impeded). In sum, Tillery's vague allegations do not state a plausible claim against Trimble.

## IV. CONCLUSION

For the foregoing reasons, I will grant Tillery leave to proceed *in forma pauperis* and dismiss his claims against Defendants "George W. Hill," Warden Byrnes, and Trimble. Because the bases for Tillery's claims against these Defendants do not support a plausible constitutional violation, I conclude that amendment of those claims would be futile. However, I will direct service of the Second Amended Complaint on the remaining Defendants—Dr. Phillips and GEO—so that Tillery may proceed on his claims against them.

An appropriate Order follows.